IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| GINNY RICHMOND, | ) | |
| | ) | CASE NO.: 6:17-cv-03040-BHH |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **AMENDED COMPLAINT** |
| | ) | **JURY TRIAL DEMANDED** |
| WELLS FARGO BANK N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff, complaining of the Defendant above-named, would respectfully show unto this Honorable Court as follows:

1. The Plaintiff is a citizen and resident of the State of South Carolina, County of Greenville.

2. Upon information and belief, the Defendant is a corporation, or other legal entity, organized and existing under the laws of one of the states of The United States, doing business in the State of South Carolina.

**FACTS OF THE CASE:**

3. Plaintiff re-alleges Paragraph 1 and 2 of the Complaint as if fully set forth herein.

4. The Plaintiff would show the following facts:

    A.    Plaintiff was a customer with Defendant Wells Fargo Bank and, during December of 2014, Plaintiff called the Wells Fargo Corporate office to ask about obtaining a truck loan. The person Plaintiff spoke with started the paperwork and advised Plaintiff that she would need to go into her local bank branch (Reidville Road, Moore, SC) to finish filling out the loan paperwork. Plaintiff was applying for a loan for $15,000.00 to be secured by a truck that was worth far more than the $15,000.00 Plaintiff was requesting. The specifications for the truck are as follows:

- 2008 Chevy Silverado 1500 LT with leather interior

- 2wd extended cab
- VIN # 1GCEC19J88Z248082 with 56,930 miles

Plaintiff went into the Reidville Road branch of Wells Fargo and spoke with their loan officer. The loan officer said that he could help her finish the paperwork but it soon became apparent that the loan officer wanted Plaintiff to apply for $15,000.00 personal line of credit (adjustable rate on an unsecured loan). Plaintiff made it clear to the loan office that she was not interested in the personal line of credit. The loan officer then talked to Plaintiff about a Platinum Bank Account as it would be of benefit to Plaintiff. He continued to push the platinum account and Plaintiff agreed to try that (not the personal line of credit). The loan officer told Plaintiff that she would have to move $50.00 from her personal checking account over to the new account in order to open the account. This allowed the loan officer access to Plaintiff's personal checking account with Plaintiff's digital signature. Plaintiff left the bank that day having given the loan officer permission to open a platinum bank account only.

B.    On December 18, 2014, Plaintiff received a letter from Defendant Wells Fargo Bank informing her that her application for a personal line of credit in the amount of $15,000.00 had been accepted. Plaintiff DID NOT apply for this loan. The letter came with checks to be used against the line of credit. Plaintiff then called the bank the day she received the letter, December 23, 2014, and told the bank officer that she did not apply for this loan and that the bank needed to cancel it right away. The bank officer said they were not able to see the account and that it probably had not yet been activated. The bank officer informed the Plaintiff to keep an eye on her account through the online banking and to call him back on December 30th. The pertinent data that Plaintiff was given on the personal line of credit is as follows:

- Account Number:  7585653199
- Reference/Application Number:  20143515800574
- Letter originated from Wells Fargo Bank, Personal
  Lines and Loans, Charlotte, NC

C.    A letter from Wells Fargo Bank, purported to have been sent on December 25, 2014, was received by the Plaintiff. This letter, from Des Moines, Iowa, confirmed the automatic payment feature on Plaintiff's personal line of credit. The letter said, "When you requested this line of credit, you indicated you would like to have your payment automatically deducted from your Wells Fargo deposit account." Again, Plaintiff did not apply for a personal line of credit and, upon information and belief, believes that an officer at the Wells Fargo Bank, or an agent of the bank, filled out this application and fraudulently used Plaintiff's signature.

D.    On December 27, 2014, Plaintiff received a letter from Wells Fargo denying Plaintiff the original loan she had requested for the purchase of a truck (Application Number 20143365000358), which the only legitimate loan application made by Plaintiff.

E.    On December 30, 2014, Plaintiff received a letter from BB&T denying her application for a truck loan due to its credit review.

F.	On January 7, 2014, Plaintiff called Wells Fargo bank and spoke to an agent named "Floyd". The agent transferred Plaintiff to his manager, "BJ", who could see the account for the personal line of credit and told Plaintiff he would close out the account. Seth Johnson, with Wells Fargo Personal Credit Management then wrote on January 7, 2014, stating that the account had been closed and asked Plaintiff to destroy all checks associated with this account. Around the same time, Plaintiff had asked Wells Fargo to close the platinum account and return the $50.00 she had paid at the time the platinum account was opened. They did so immediately.

Plaintiff was highly distraught that an account she had not applied for, nor authorized, had been opened and was the apparent cause for BB&T denying the loan she had requested.

G.	Plaintiff also spoke with an agent in the Wells Fargo Personal Lines and Loans Fraud Claims and informed the agent that the account had been opened fraudulently. Plaintiff asked the agent if someone would have to sign the application in order for it to be approved and Plaintiff was informed that yes it would have to be signed. The agent assured Plaintiff that she would look into the matter and it would definitely be handled internally and immediately. The agent also assured Plaintiff that this would not be reported in any way on Plaintiff's credit since it was never used and Plaintiff did not authorize the account.

On January 9, 2015, Plaintiff received a letter from this agent's department, Personal Lines and Loans Fraud Claims, advising Plaintiff that the account had been closed and that the bank had "contacted the national credit bureaus to remove any information from Plaintiff's credit report pertaining to the account in question." This letter was signed by "Marcel H."

H.	Plaintiff received a letter written on January 10, 2015, advising that Plaintiff had been approved for credit but that Plaintiff had never "closed" the loan. Once again, and without permission, Plaintiff's credit was pulled by Wells Fargo Bank for another application (application number 20143515000562), an application of which Plaintiff has absolutely no knowledge. This application number is different from the first one. Multiple applications for credit information by Wells Fargo and the fictitious line of credit application, Plaintiff believes, were the cause of her credit issues for the following two years.

I.	Still in need of a truck for Plaintiff's husband for his employment, Plaintiff applied to Toyota for a lease through Toyota Finance. Plaintiff received a letter on March 13, 2015, denying Plaintiff's lease application due to poor credit review.

J.	In April of 2015, Plaintiff applied for a home lease through Homestead at Hartness and was accepted. Plaintiff believes that she was approved only because she and her husband applied for the lease jointly.

K.	In the fall of 2015, Plaintiff applied for and was denied a car lease through Acura Finance due to negative credit report.

  L. Plaintiff found a house for sale in Taylors, South Carolina, and, in February, 2016, applied for a home loan with Greer State Bank. Plaintiff was denied this loan and, in its denial letter, Greer State Bank stated that she was being denied the loan due to the following:

- Too many credit inquiries in the last twelve (12) months;

- Length of time accounts have been established (Wells Fargo account opened and closed within ninety (90) days;

- Too many accounts recently opened. (Plaintiff does not know how many accounts were opened without her knowledge. She had absolute knowledge of at least two (2) different applications that she did not sign.);

- Too many consumer finance company accounts.

  M. Plaintiff received a letter on January 3, 2017, from a third party that Wells Fargo had hired to look into customers that may have been affected by the "gaming" scandal (per Teressa Jones in the Wells Fargo Executive Office). This letter informed Plaintiff that Wells Fargo did not accurately report the closed personal line of credit and, therefore, for two years, it had been on Plaintiff's credit report. The letter further stated, "Please be assured that we are working with the credit reporting agencies below (TransUnion, Experian, EquiFax, CSD, Innovis) to request that this account no longer appear on Plaintiff's credit. This account has been closed and the credit reporting agencies will verify that this account has been updated. If needed, they will also update Plaintiff's credit report so it appears to lenders and requestors that Plaintiff's account was never opened and is no longer reporting."

  Therefore, based upon this agent's letter and other communications, the following facts are confirmed:

- Defendant Wells Fargo Bank DID open the personal line of credit account without Plaintiff's permission (12/18/14);

- Defendant Wells Fargo Bank incorrectly assured Plaintiff they would not allow the unauthorized opened account to be reported on her credit (1/9/15);

- Defendant Wells Fargo Bank DID report the unauthorized opened account to the credit bureaus which has impacted Plaintiff's ability to receive neither the truck loan or a home loan.

 The actions by Defendant Wells Fargo Bank not only affected Plaintiff's ability to get credit, the effect on Plaintiff's credit score the truck payment Plaintiff has (obtained March of 2015, on which loan Plaintiff was co-signer), car loan Plaintiff obtained in November of 2015, the

home lease Plaintiff obtained in May of 2015, and the devastating loss of the ability of Plaintiff to become a homeowner.

N.    On May 20, 2017, Plaintiff went into the Woodruff Road, Greenville, South Carolina, branch of Wells Fargo and spoke with "Aimee", the manager on duty. Aimee tried to look up the account in question and advised Plaintiff there was nothing in the system about that application or loan number. Aimee suggested that Plaintiff call a 1-800 number and ask them to pull of the information and mail it to Plaintiff. Aimee gave Plaintiff two different numbers both of which turned out to be facsimile number.

O.    Plaintiff called 1-800-946-2626 and advised the customer service agent that she needed to speak with someone about a closed personal line of credit. The agent advised Plaintiff that she could help so Plaintiff gave her the account number and application number. The agent informed Plaintiff that these were not valid numbers and that Plaintiff needed to speak with another department. When the customer service agent transferred Plaintiff's call, the call was disconnected.

P.    On May 22, 2017, Plaintiff called 1-844-576-6424, a number she was given on the letter from Wells Fargo Bank dated January 3, 2017. This number connected Plaintiff with the Executive Office of Wells Fargo Bank in Virginia. Plaintiff spoke with Teressa Jones who listened to the narrative and took notes. Plaintiff explained to Ms. Jones that she wanted a copy of the original application. Ms. Jones told Plaintiff she would do her best to get that and would open a case number. Ms. Jones said the credit information had already been suppressed (lenders cannot see the information any longer) and that this account with Wells Fargo was no longer in the system. Ms. Jones further informed Plaintiff that she could request the information and that all cases that came in to her and were opened had to be resolved within ten (10) days and that Plaintiff should see some form of resolution by June 6, 2017. If it could not be resolved within that ten (10) days, Ms. Jones said that Plaintiff should receive a letter from Wells Fargo requesting more time. Ms. Jones informed Plaintiff to work only with her from that time forward.

Q.    Plaintiff received a voicemail on May 23, 2017, requesting that she call Brian Scales with the Executive Office of Wells Fargo. When Plaintiff called Mr. Scales, he informed her that Teressa Jones would no longer be handling her case and that he would be helping her. When Plaintiff asked Mr. Scales why Ms. Jones would not be helping her, Mr. Scales responded, "she has a lot of other cases and we don't want your case to get dropped.: Mr. Scales asked Plaintiff, once again, to repeat the narrative to him while he took more notes. Mr. Scales asked Plaintiff if she had any letters backing up her story and Plaintiff told him that she had all the letters Wells Fargo had sent to her. Mr. Scales then asked Plaintiff to scan and send him copies of all the paperwork she had in order for him to move forward with her claim. Mr. Scale advised Plaintiff that he did not see any of this in his system, that he needed to research the matter, and request data from their "purged" data system. Mr. Scales asked Plaintiff what exactly she was hoping would come from all of this and Plaintiff explained to him that the first thing she wanted was to obtain all the paperwork Wells Fargo had including the original application that was forged, as well as the second application of which she had no knowledge. Mr. Scales gave the Plaintiff the following case number and his contact information:

- Case Number:  123783617

- Brian Scales (844) 576-6424 extension 25336

- Brian.Scales@Wellsfargo.com

- Fax (877) 243-3589

Due to the actions of the Defendant, Plaintiff believes her credit has been impaired as follows:

- Original truck worth more than asking price because Plaintiff could not get a loan in time;

- Denied multiple times for loans for truck including loan from Wells Fargo;

- Denied car loan from Acura;

- Denied home loan from Greer State Bank;

- Higher lease payments on car (GMC Financial) and and truck (Toyota Financial);

- Wells Fargo filled out two applications without Plaintiff's permission which has caused an impairment of Plaintiff's credit.

Further, Plaintiff would show that her credit history corresponds with the time frame in this matter.  Plaintiff's credit history from the time the fraudulent loans were made by Defendant is as follows:

Before Wells Fargo incident:
12/02/14     TransUnion 722
12/17/14     Experian 749

After Wells Fargo incident:
01/08/15     Equifax 680
03/02/15     Equifax 645
02/05/16     Experian 788
02/05/16     TransUnion 708
02/05/16     Equifax 680

After Defendant corrected credit issue:
09/17        TransUnion 795
                Equifax 791

### FOR A FIRST CAUSE OF ACTION
### Violation of S. C. Consumer Protection Code,
### S.C. Code Ann. Section 37-5-101
### (1976 as amended)

5.    Plaintiff re-alleges the allegations set forth within Paragraphs 3 and 4 of the Complaint as if fully set forth herein.

6.    Plaintiff visited Defendant's office to apply for a truck loan as stated in Facts of the Case above. Defendant attempted to get Plaintiff to open a personal line of credit which Plaintiff refused to do. Nonetheless, without her knowledge and using a forged signature, Defendant opened such a line of credit in Plaintiff's name (account number 7585653199).

Plaintiff discovered this wrongdoing and demanded the account be closed. She was assured it would be closed but it was not. The opening of said account, as well as unneeded credit checks contributed to, and largely caused, the credit difficulties Plaintiff experienced.

Another account (account number 20143515000562) was also opened which was an application for a loan of which she had no knowledge. Amazingly, this fallacious application, of which she had no knowledge, was denied by the Defendant bank. This action also, Plaintiff believes, contributed to and was largely responsible for the credit difficulties which followed.

7.    These two actions were both brought immediately to the attention of the authorities and officers at Wells Fargo.

8.    Plaintiff was assured there would be no negative reporting by Wells Fargo on her credit report concerning the fallacious applications.

9. However, Wells Fargo did not correct its wrongdoing with the credit reporting agencies and its false reporting, based on its own misconduct, has damaged the Plaintiff by way of lost credit opportunities in that purchases that could have been made were denied because of open accounts not made by Plaintiff; excessive credit inquiries made by Wells Fargo; and leaving the account open although Wells Fargo promised to close the account and correct the errors with the credit bureaus.

10. For the above reasons, Plaintiff seeks damages according to the Code as well as consequential damages, attorneys' fees, punitive damages, treble damages, and any other application damages for violation of this and any other Code sections or state statutes.

### FOR A SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

11. Plaintiff re-alleges the allegations set forth within Paragraphs 5 - 10 of the Complaint as if fully set forth herein.

12. Plaintiff has asserted that there had been no application made for a personal line of credit and yet Defendant submitted such application after the Plaintiff declined this personal line of credit. Not only was this an application that Plaintiff did not complete, Plaintiff DID NOT authorize this application or loan.

13. Furthermore, the Defendant also approved automatic payments for this personal line of credit to be automatically withdrawn from Plaintiff's own personal checking and/or bank account for payment, a service which required approval and signature which Plaintiff did not perform nor authorize.

### FOR A THIRD CAUSE OF ACTION
### (Conversion)

14.     Plaintiff re-alleges the allegations set forth within Paragraphs 11, 12, and 13 of the Complaint as if fully set forth herein.

15.     Defendant has misused and, in fact, transferred the good credit and standing of the Plaintiff to their benefit by fabricating applications for credit for the Plaintiff did not apply or authorize.

16.     Upon information and belief, Defendant's policy has been to push or pressure its own employees to open multiple accounts not requested by their customers which would have the effect of increasing the stock value of their own Wells Fargo stock, making the value of the stock look better that it actually is.  In fact, this practice did make the Defendant's' stock go up.

17,     Plaintiff was informed by Defendant that it would not report these fraudulent accounts, but the Defendant did, in fact, report these accounts to all the national credit reporting agencies.

### FOR A FOURTH CAUSE OF ACTION
**(Violation of S. C.  Code Ann Section 39-5-20, et. Seq.**
**(1976 as amended)**
**South Carolina Unfair Trade Practices Act.**

18.     Plaintiff re-alleges the allegations contained in Paragraph s 14 – 17 of the Complaint as if fully set forth herein.

19.     Upon information and belief, Defendant is a corporation authorized to conduct business in the State of South Carolina, and has repeatedly used similar unfair trade practices as numerated in this Complaint.  Said unfair trade practices were unauthorized by individual customers to benefit itself at the customers' expense.  Such actions have been repeated in the past and continue to be repeated, and potentially will continue in the future.

### FOR A FIFTH CAUSE OF ACTION
**(Unconscionability and Unconscionability Violations as Set Forth**
**In the S. C. Consumer Protections Code Section 37-5-108)**

20. Plaintiff re-alleges the allegations contained in Paragraphs 18 and 19 of the Complaint as if fully set forth herein.

21. The Defendant, over the past series of years, has undertaken a systematic program of creating false accounts nationwide. This has received extensive media attention. The purpose of such account inflation was to increase the value of the stock of Wells Fargo Bank. Plaintiff contends she was one of those victims.

22. Defendant's actions toward Plaintiff were unconscionable in that:

   a. Plaintiff's name was forged on applications that she did not request or authorize;

   b. These actions caused Plaintiff to suffer difficulties with her credit; and

   c. The actions of Defendant following its misdeeds were insufficient to rectify the damage as Defendant hid its actions from Plaintiff in a series of communications with Plaintiff. These communications led Plaintiff into a "chase your tail" series of actions wherein the Defendant changed contacts, gave faulty instructions and misinformation to the Plaintiff.

These actions constitute unconscionable activity and would offend the conscience of a normal or average citizen.

**WHEREFORE**, having fully complained against the Defendant herein, the Plaintiff prays as follows:

1. For actual damages;

2. For punitive damages;

3. For treble damages;

4. For attorneys' fees;

     5.     For consequential damages upon a finding of a breach of the South Carolina Unfair Trade Practices Act; and

     6.     Such other and further relief as this Court may deem just and proper.

Respectfully submitted,
**THE CHILDS LAW FIRM**

By:    s/ROBERT C. CHILDS, III
Robert C. Childs, III (FedBar #123)
2100 Poinsett Highway, Suite E
Greenville, SC  29609
(864) 242-9997    Phone
(864) 242-9914    Fax
Robert@lawyerchilds.com

David L. Thomas (FedBar #6693)
23 Wade Hampton Boulevard
Greenville, South Carolina 29609
(864) 271-1707    Phone
(864) 271-6371    Fax
david@davidthomaslawfirm.com

Attorneys for the Plaintiff

Greenville, South Carolina

November 21, 2017